UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
LINDA THOMAS BATSON,

                            Plaintiff,                **REPORT AND**
                                          **RECOMMENDATION**

          -against-                      CV 14-3817 (JS)(AYS)

GLEN COVE CITY SCHOOL DISTRICT,
GLEN COVE CITY BOARD OF EDUCATION,
NELSON IOCOLANO, individually and in his
official capacity, IDA MCQUAIR, individually and
in her official capacity, and LOUIS ZOCCHIA,
individually and in his official capacity,

                            Defendants.
---------------------------------------------------------------X
APPEARANCES:
TAND & ASSOCIATES, P.C.
Attorneys for Plaintiff
BY: JONATHAN A. TAND, ESQ.
990 Stewart Avenue, Suite 225
Garden City, New York 11530

SOKOLOFF STERN LLP
Attorneys for Defendants
BY: LEO DORFMAN, ESQ.
     CHELSEA WEISBORD, ESQ.
179 Westbury Avenue
Carle Place, New York 11514

**SHIELDS, Magistrate Judge:**

       This is an employment discrimination action commenced by Plaintiff Linda Thomas

Batson ("Batson" or "Plaintiff") alleging that Defendants discriminated against her on account of

her race. Presently before this Court for Report and Recommendation is Defendants' motion for

summary judgment as to all claims. For the reasons set forth below it is respectfully

recommended that the motion be granted.

PROCEDURAL BACKGROUND

I.    The Initial Complaint and the Motion to Dismiss

On June 18, 2014, Plaintiff filed her initial complaint in this action alleging federal and state claims of employment discrimination based upon race. In particular, Plaintiff alleged federal claims pursuant to 42 U.S.C. §1981 ("Section 1981") and 42 U.S.C. § 1983 ("Section 1983"). State law claims were alleged pursuant to the New York State Human Rights Law (the "NYSHRL"). Named as Defendants were Plaintiff's former employer, the Glen Cove City School District (the "District"), and the Glen Cove City Board of Education ("the "Board"). Plaintiff also named individual Defendants: (1) Nelson Iocolano ("Iocolano"), the principal at Finley Middle School ("Finley") the District school where Plaintiff last worked, (2) Joseph Laria ("Laria") the District's Superintendent of Schools, (3) Ida McQuair ("McQuair"), a member of the Board and (4) Louis Zocchia ("Zocchia"), the District's Superintendent for Human Resources. See generally Docket Entry herein ("DE") DE 1.

On August 27, 2014, Defendants moved to dismiss Plaintiff's initial complaint. In a Memorandum and Order dated September 15, 2015, the District Court granted the motion to dismiss. DE 14. Construing the complaint as alleging only claims based upon a hostile racial environment, the District Court discussed the facts therein, and held that Plaintiff failed to plausibly allege any claim of a hostile working environment. The Court therefore granted the motion to dismiss, but without prejudice to allow Plaintiff the opportunity to plead direct claims of discrimination. DE 14 at 20.

2

II.    The Amended Complaint and Second Motion to Dismiss

On October 15, 2015, Plaintiff filed an amended complaint. DE 16.[1]  Plaintiff's amended complaint sets forth the same facts alleged in Plaintiff's initial pleading. Like her original complaint, Plaintiff's amended complaint alleges Federal claims pursuant to Sections 1981 and 1983.  It also alleges a Federal claim pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), and New York State law claims pursuant to the NYSHRL.  The Section 1981, Title VII and NYSHRL claims allege race discrimination. The Section 1983 claim alleges a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiff's amended pleading continued to name as Defendants the District, the Board, and individual Defendants Iocolano, Laria, McQuair and Zocchia. DE 16 at ¶ 2.

In support of her claims for disparate treatment based upon race, Plaintiff states that during her last year of employment she was unfairly treated based upon her race, and that she was terminated based upon the pretext that her position was being eliminated due to budgetary concerns. DE 16 at ¶ 82.  Plaintiff, a social worker, attempts to support her disparate treatment claim by alleging that she was replaced with a Caucasian guidance counselor, with "similar higher education qualifications and counseling functions". Id.

On October 3, 2015, Defendants moved to dismiss Plaintiff's second pleading. DE 18. In support of their motion Defendants argued that any Title VII claim must be dismissed because Plaintiff filed no claim with the EEOC and therefore never received a "right to sue" letter.  DE 20 at 6. The federal claims against individual defendants McQuair, Laria and Zocchia were

───────────────

1. Plaintiff's pleading refers to the complaint filed on October 15, 2015, DE 16, as the "Second Amended Complaint." See DE 16. The pleading is, however, the first complaint filed after the initial complaint and is therefore referred to herein for clarity as the amended complaint.

sought to be dismissed on the ground that these Defendants lacked personal involvement in the alleged Constitutional deprivations. It was also argued that the NYSHRL claims must be dismissed as time-barred. Finally, it was argued that Defendant Iocolano was not a proper Defendant under the state statute. In response to the motion, Plaintiff conceded that she could state no claim under Title VII, but otherwise opposed the Defendants' motion to dismiss.

In a Memorandum and Order dated August 12, 2016, the District Court granted in part, and denied in part the motion to dismiss the amended complaint. DE 30. The District Court analyzed the sufficiency of plaintiff's prima facie pleading in the context of the standards set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The Court noted that to survive the motion the Plaintiff was required to plausibly allege facts in support of her claim so as to sustain a minimal burden of showing discriminatory motivation. The Court considered whether it was plausibly alleged that Plaintiff's employer took adverse action against her, and that her race was a motivating factor in such action. Id. at 12. With respect to the individually named Defendants, the Court considered whether Plaintiff plausibly alleged personal involvement sufficient for federal liability to attach.

A finding that Zocchia played a role (albeit a limited one) in Plaintiff's termination, led the District Court to decline to dismiss her from the case at the pleadings stage. However, with respect to individual Defendants Laria and McQuair, it was held that Plaintiff's allegations with respect personal involvement were insufficient to plausibly allege a Constitutional violation. The Court therefore dismissed the Federal claims against Defendants Laria and McQuair. Accordingly, at this stage the Federal claims survive only as to the School District and Board, and individual Defendants Iocolano and Zocchia.

4

Turning to the NYSHRL claims, the District Court first considered the timelines of the claims against the District, the Board and Individual Defendants McQuair, Laria and Zoccia. Holding those claims to be time-barred, the Court dismissed the NYSHRL claims as to these Defendants. The Court held viable, however, the aiding and abetting claim against Defendant Iocolano.

III.    The Present Posture of the Case and the Motion for Summary Judgment

Following the District Court's decision on Defendants' second motion to dismiss, the claims that remain viable are those brought pursuant to Sections 1981 and 1983 against the District, the School Board and individual Defendants Iocolano and Zocchia, as well as the NYSHRL against individual Defendant Iocolano. The procedural posture of this case makes clear that Plaintiff can allege no claim of a hostile environment – whether based upon Title VII, the NYSHRL, or Federal law. The District Court construed the Plaintiff's initial complaint herein as alleging only such claims and held that Plaintiff stated no such claim. Plaintiff's Amended Complaint alleges no new facts in support of any such claim and she therefore continues to be bound by the District Court's dismissal of any claim of a hostile environment.[2]

---

2. Even if the present motion and supporting papers were construed to allege a hostile environment, such claims would necessarily be dismissed. To support such claims Plaintiff must show that Defendants' conduct was objectively and subjectively hostile or abusive, and that such environment existed because of her gender. Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007); see Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). In determining whether conduct rises to the level of a hostile environment courts consider: (1) the frequency and severity of the discriminatory conduct; (2) whether it was physically threatening or humiliating, or a mere offensive utterance; (3) whether it unreasonably interfered with plaintiff's work, and (4) any alleged psychological harm. Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002); Sotomayor, 862 F. Supp.2d at 260. While single incidents of harassment generally do not create a hostile work environment, a plaintiff may nevertheless survive summary judgment in a case involving an allegation of a single instance of harassment by showing that it is sufficiently severe. Summa v. Hofstra University, 708 F.3d 115, 126 (2d Cir. 2013).

5

Presently before this Court, for Report and Recommendation to the Honorable Joanna Seybert, is the motion for summary judgment as to all those remaining claims. All Defendants move for summary judgment as to all claims. In addition, Defendants Iocolano and Zocchia move for summary judgment as Plaintiff's Section 1983 claim on the ground of qualified immunity.

FACTUAL BACKGROUND

I.    Basis of Facts Recited Herein

The facts set forth below are drawn largely from the parties' statements of material facts submitted pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Rule 56.1 Statements"). Defendants' statement annexes the deposition testimony of Plaintiff, as well as the testimonies of Iocolano, District school psychologist (and former co-worker of Plaintiff) Courtney Farrell ("Farrell"), and Mary Murphy ("Murphy"), the now-retired District Director of Special Education. Plaintiff submits her own Rule 56.1 statement, which, in large part, agrees with the facts set forth in Defendants' statement, but offers explanations, and Plaintiff's point of view and opinions as to how facts should be construed. Plaintiff also annexes exhibits to her attorney's declaration. DE 59. In addition to certain documents already submitted by Defendants, Plaintiff submits copies of the

---

Plaintiff's claims here that the three work related incidents somehow support a hostile environment claim are plainly insufficient. She states no new facts to support additional incidents of an allegedly hostile environment. As the District Court held, "While Plaintiff may have felt personally aggrieved by Defendants' decisions, her subjective disappointment does not 'create an *objectively hostile or abusive work environment* – an environment that a reasonable person would find hostile or abusive.'". DE 14 at 16-17.  Nothing put before this Court in the context of this motion changes this result.

District's job descriptions of social worker and guidance counselor, as well as a letter dated May 13, 2013 from Karen Ferguson, a District special education teacher, and President of the Glen Cove Teachers Association ("Ferguson"). DE 59-1; 59-2. That letter was addressed to the Board and copied to Plaintiff. It states Ferguson's opinion that the 2013 elimination of Plaintiff's position, described in greater detail below, would not result in financial savings to the District, and would result in the loss of a much-needed social worker.  DE 59-5.

The Court turns to discuss the facts revealed by the documents described above.

II.   <u>Plaintiff's Initial Employment and Tenure at the District: 2001-2004</u>

Plaintiff was first employed as by the District in 2001.  Def. 56.1 ¶ 3; DE 55-9. Her initial appointment was to a three-year probationary period as a "Social Worker in the School Social Worker tenure area effective September 2001- through August 31, 2004".  <u>Id.</u>  On March 30, 2004, Plaintiff was granted tenure. DE 55-10.

III.   <u>2010 Abolishment of Plaintiff's Position</u>

On April 28, 2010, Plaintiff was advised that during its March 18, 2010 meeting, the Board stated its intention to abolish Plaintiff's position as a Social Worker as of June 30, 2010. DE 55-11. That letter advised that the decision was made due to "budget and enrollment constraints". <u>Id.</u> The Board minutes of its meeting held on June 7, 2010 indicate that this action was taken, stating that Plaintiff's position was being abolished due to "fiscal constraints" and stating that Batson's position was being abolished, "as she is the least senior employee in the tenure area".  DE 55-12.  The minutes of that Board meeting also state that other positions in the District were being similarly abolished due to "fiscal constraints." DE 55-12. While names are redacted, it is clear that the Board eliminated the least senior employees in each of the positions abolished. <u>Id.</u> Plaintiff received official notice of her June 30, 2010 termination by way of a letter

dated June 8, 2010. DE 55-13. That letter also informed Plaintiff that she would be placed on a "Preferred Eligibility List" for seven years, and that if a position became available in her tenure area, she would be notified.  Id.

IV.    Plaintiff's 2011-13 Employment by the District and Honor Society Duties

On June 1, 2011, Plaintiff was advised of the availability of a school social worker position at the District. DE 55-14. By letter dated June 2, 2011, Plaintiff accepted that position. DE 55-15. On June 21, 2011, Plaintiff was informed that the Board approved her recall as a social worker at the District. DE 55-17.

In addition to her social worker position, Plaintiff was appointed, on October 17, 2011, to serve as advisor for the Junior National Honor Society Club.  DE 55-21. Plaintiff was also appointed to serve in this capacity for the 2012-13 school year. DE 55-22.

V.    Plaintiff's Allegations as to Disagreements with Iocolano

Plaintiff describes her supervision by Defendant (and Finley Principal) Iocolano as "distant." DE 61 ¶ 47. She states that Iocolano's interaction with others he supervised as "much more amiable".  Id.  In addition to these general comments, Plaintiff's complaint and papers in opposition to the present motion detail three incidents of what she characterizes as professional disagreement with Iocolano. Plaintiff also discusses an interaction with McQuair, who was a parent of a student eligible for membership in the Finely Junior National Honors Society ("JNHS").

Other than the last referenced incident relating to the JNHS, two of the incidents to which Plaintiff attaches importance involved students with suicidal ideations, and one involved a student with a personal hygiene issue.  DE 61 ¶ 48. Although Defendants deny that Plaintiff was ultimately terminated as a result of her reactions with respect to any of these situations, Plaintiff

attaches significant to these incidents, primarily in support of her argument of disparate treatment. See DE 61 ¶ 49. The Court therefore turns to discuss the facts surrounding these matters.

    A.    <u>The First January 2013 Incident Involving A Suicidal Student</u>

On January 28, 2013, Plaintiff was advised by a Finley teacher that a student was exhibiting suicidal thoughts. In response to that report, Plaintiff spoke with school psychologist Farrell, stating that she and Farrell should interview the student together. DE 61 ¶ 50. Farrell told Batson that she was leaving the building for a meeting but would return within 1 to 1 and 1/2 hours. DE 61 ¶ 53. Batson then waited in her office for Farrell's return. DE 61 ¶ 55-57. The situation came to the attention of Iocolano when he was informed that the student who was the subject of the report to Batson was observed banging her head against a locker.  DE ¶ 59-62. Batson was also advised of this development by a teacher.  She responded by stating that she was planning on interviewing the student when Farrell returned. According to Plaintiff, before Farrell returned, Iocolano appeared at Plaintiff's office and began berating her.  Iocolano characterized the situation involving the student as a crisis, and demanded that Batson interview the student immediately, and not wait for Farrell's return. DE 61 ¶ 62-69.

It was and remains Plaintiff's position that protocol required that she wait for the return of school psychologist Farrell before interviewing the student.  DE 61 ¶ 72.  Indeed, she states that such protocol required specifically that she not interview a suicidal student outside of the presence of the school psychologist. DE 61 ¶ 83. She further states that she was advised of this position by Murphy, who told Plaintiff that she was not to interview suicidal students, under any circumstances, outside of the presence of the school psychologist. DE 61 ¶ 85. Defendants, on the other hand, characterize any situation involving a threat of suicide as a crisis situation that

must be handled immediately. Plaintiff agreed, at her deposition, that it was a good idea to speak with a potentially suicidal student as soon as possible.  DE 61 ¶ 86.

After Iocolano told Plaintiff to interview the suicidal student immediately, Plaintiff brought the student to her office and began to interview her alone.  DE 61 ¶ 76.  Farrell returned to the building after the interview began, and joined Batson for the remainder of the interview. DE 61 ¶ 77.  Plaintiff states that after the interview was concluded, Iocolano continued to berate Plaintiff (and not Farrell) for how the situation was handled.  DE 61 ¶ 80.

   B.    Second January 2013 Incident Involving a Suicidal Student

On the same day of the incident described above, Plaintiff was advised that another student expressed suicidal thoughts.  DE 61 ¶ 87. At that time, Farrell was in the building, and she and Batson proceeded to interview the student. The student told Batson and Farrell that she had been molested by a family friend who stayed with her family years earlier. Farrell and Batson agreed that the student should undergo a psychiatric examination. They thereafter escorted the student to a hospital, via ambulance. Iocolano was made aware of this incident, and agreed with the decision to have the student sent to a hospital. He and Batson disagreed as to whether Child Protective Services ("CPS") should be called. Batson said such a call was unnecessary. Upon Iocolano's insistence, Batson called CPS.

   C.    January 2013 Incident Involving a Student with Personal Hygiene Issues

The next situation involving an alleged disagreement with Iocolano also occurred in January of 2013, and involved a student with a personal hygiene issue. The student's teacher asked Batson to intervene. While Batson thought that sending a general notice about hygiene issues to the student's entire class was appropriate, it was the classroom teacher's opinion that the student's parents should be contacted directly to address their child's personal hygiene. The

10

teacher expressed her opinion to Iocolano, who agreed with the classroom teacher. He therefore instructed Batson to make direct contact with the student's parents.  Batson complied with this request.

Like their position with respect to the incidents above, Defendants take the position that Batson was not disciplined for taking a position different from that of the classroom teacher, and the record reveals no formal written discipline. Plaintiff, however, disputes this position, stating that Iocolano accused her of "rolling her eyes" at him, stating that he would not tolerate that type of behavior.  He is also alleged to have told Batson that he would support any decision she might make to transfer to another building in the District.  DE 61 ¶ 124.

       D.    <u>JNHS Incident</u>

As noted above, in addition to her social worker duties, Plaintiff was appointed to act as advisor for the Junior National Honor Society Club (the "JNHS").  DE 55-21;22. The final interaction relied upon by Plaintiff to show bias involved her role as advisor to the Finley JNHS. On February 13, 2013, Batson sent out notices to parents of eligible students of that club's community service requirement. As a parent of one such student, McQuair received that notice. She contacted Batson, expressing her opinion that the notice was sent out too late for her child to satisfy the community service requirement necessary for membership in the JNHS. DE 61 ¶133. McQuair also brought this allegedly late notice to Iocolano who asked Batson about the JNHS process and to provide him with documents. DE 61 ¶¶136-140. After this incident the Finley website was updated to provide better access to information regarding membership in the JNHS.

VI.    <u>Events Immediately Following Incidents Involving Iocolano</u>

There is no dispute that the incidents described above resulted in neither a negative evaluation, nor any formal disciplinary action against Batson. The January 2013 incident

involving suicidal students was however, followed by Iocolano's distribution of an e-mail, the subject of which was "Crisis Situations."  That email was sent to Plaintiff, Farrell and two other District employees – an assistant principal and a guidance counselor. It stated as follows: "just so we all are on the same page . . .Moving forward, if a student is in crisis for whatever reasons, you must drop what you're doing and address it immediately."  DE 55-19. It further states that "no one's availability should delay handling the situation and that waiting for Courtney (Farrell) is not a necessity".  Id. Finally, Iocolano's e-mail states than at the "first inkling" that there is a student with suicidal ideations, an administrator should be informed immediately, and if no such administrator is available, Iocolano should be called on a phone number set forth therein. Id.

The January 2013 E-mail makes no mention of any particular situation.  It was sent, as described above to four separate individuals and did not state that any person in particular had mishandled any particular situation. It made clear, however, the going forward policy to be followed in a crisis situation, including that presented when a student expresses suicidal thoughts.

VII.    Positive Observations During the 2013 School Year

Following the incidents discussed above, Batson went on to receive favorable ratings during evaluations conducted later in the 2013 school year. Annexed to Defendants' motion is a written report documenting an observation of Plaintiff's performance that took place on February 27, 2013. DE 55-27. That report is a positive observation referring, inter alia, to Plaintiff's ability to develop an appropriate counseling session and to promote a comfortable setting for the student that promoted conversation.  DE 55-27. A second classroom observation report dated March 13, 2013 similarly refers to Plaintiff's ability to establish a rapport with her student, as well as

12

Batson's ability to conduct an effective counseling situation which included traveling with a student to the hospital.

VIII.    <u>2013 Abolishment of Plaintiff's Position</u>

In a letter dated April 8, 2013 from Superintendent Laria, Plaintiff was informed that due to budgetary constraints, and her status on the tenure seniority list, her social worker position was being abolished. The decision to abolish the social worker position at Finley was made at the suggestion of Iocolano who felt there was a "desperate need" for a third guidance counselor at the school. DE 61 at ¶28. Plaintiff disputes this reasoning as pretext, relying on the different duties performed by social workers and guidance counselors. She notes that while both social workers and guidance counsels may counsel students, Medicaid would reimburse the District only for counseling performed by a social worker.  DE 61 ¶ 29. Plaintiff also questions the claim that hiring a guidance counselor would result in budgetary savings. <u>Id.</u> Her position is supported by Murphy's letter to the Board in which she explained that any budgetary saving would be minimal, at best. DE 59-5.

A resolution terminating Plaintiff's employment was planned to be presented to the Board at its June 17, 2013 meeting, with an effective termination date of June 30, 2013.  DE 55-29. Like her earlier termination, Plaintiff was again advised that she would be placed on a preferred eligibility list that might entitle her to reinstatement. <u>Id.</u> As envisioned by the letter, the position of tenured social worker was, indeed, abolished by the Board at its June 17, 2013 meeting, and Plaintiff received notice of that vote. DE 55-30; 55-31. As planned, the District hired a third guidance counselor for Finley for the 2013-2014 school year.  That guidance counselor was a Caucasian female.  DE 61 ¶41.

13

IX.    Events Following 2013

On July 30, 2013, Iocolano forwarded plaintiff an email received from a different school district advising Plaintiff of the availability of a social worker position at that district.  DE 55-32. On July 31, 2013, Plaintiff was advised of the availability, and offered the position of a substitute social worker position at the District. DE 55-33.  In an email dated August 9, 2013, Batson accepted that position. DE 55-34. The following year, Plaintiff was offered a permanent substitute teacher position at Finley for the 2014-2015 school year. DE 55-35. Citing her recent hiring at another District, Plaintiff declined to accept that position.  DE 55-36. In August of 2015, Plaintiff was again offered a position at the District. This was a per diem substitute position.  Plaintiff never responded to this offer of employment and therefore did not accept this position.  DE 61 ¶ 175-76.

DISCUSSION

I.    Legal Principles: Standards on Summary Judgment

Summary judgment is appropriately granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009). A fact is "material" if it might affect the outcome of the litigation under the relevant law. Id. The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. Celotex, 477 U.S. at 322. Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an

14

element essential to that party's case, and on which that party will bear the burden of proof at trial." Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002) (quoting Celotex, 477 U.S. at 322).

In deciding a motion for summary judgment, the Court must "resolve all ambiguities and draw all reasonable inferences against the moving party". Tolbert v. Smith, 2015 WL 3875237 *4 (2d Cir. 2015); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise, Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995), and must do more than show that there is "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  Instead, the non-moving party must "set forth significant, probative evidence on which a reasonable fact-finder could decide" in her favor. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256–57 (1986).

While the Second Circuit often notes the caution to be employed when deciding whether to grant summary judgment in cases where an employer's intent is at issue, that court has noted similarly that "the salutary purposes of summary judgment-avoiding protracted and harassing trials-apply no less to discrimination cases than to ... other areas of litigation." Tolbert, 2015 WL 3875237 *4; see also Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008) (summary judgment appropriate to avoid "protracted, expensive and harassing trials"); Abdu–Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases"); Kohutka v. Town of Hempstead, 994 F.Supp.2d 305, 316 (E.D.N.Y. 2014).

With these standards in mind, the Court turns to discuss the merits of the motion.

II.    Stating an Employment Discrimination Claim

As noted, the claims that remain viable are those brought pursuant to Sections 1981 and 1983 against the District, the School Board and individual Defendants Iocolano and Zocchia, as well as the NYSHRL against individual Defendant Iocolano. Defendants move for summary judgment as to all claims.  In addition, Defendants Iocolana and Zocchia move for summary judgment as Plaintiff's Section 1983 claim on the ground of qualified immunity.

A.    Stating a Claim Under Section 1981

To establish a § 1981 claim, a plaintiff must show: (1) that she is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) that the discrimination concerned one or more of the activities enumerated in §1981. Lauture v. Internat'l Business Machines Corp., 216 F.3d 258, 260 (2d Cir. 2000); Simpson v. Uniondale Sch. Dist., 702 F.2d 122, 131 (E.D.N.Y. 2010). An "essential element" of plaintiff's case is the requirement that "requirement that the alleged discrimination took place because of the individual's race." Sherwyn Toppin Marketing Consultants, Inc. v. City of New York, 2013 WL 685382, *4 (E.D.N.Y. February 25, 2013), quoting, Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1088 (2d Cir.1993). Importantly, "[n]aked assertions by a plaintiff that race was a motivating factor-without a fact specific allegation of a causal link between a defendant's conduct and the plaintiff's race-are too conclusory to allege a § 1981 violation." Id., quoting, Hargett v. N.Y.C. Transit Auth., 640 F.Supp.2d 450, 473 (S.D.N.Y. 2009) (citation omitted), aff'd sub nom., Hargett v. Metro. Transp. Auth., 381 F. App'x 12 (2d Cir. 2010).

B.    Stating a Section 1983 Claim Under the Equal Protection Clause

Protection against gender discrimination is prohibited, in the public law employment context, by the Equal Protection Clause of the Constitution. A public employee is deprived of her

16

Equal Protection right to be free from gender discrimination "when she is treated differently from other similarly situated employees, thus suffering 'disparate treatment because of gender.'" Potash v. Florida Union Free School Dist., 972 F.Supp.2d 557, 577 (S.D.N.Y. 2013) (quoting Annis v. Cnty. of Westchester, 136 F.3d 239, 245 (2d Cir. 1998) (quoting Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 144 (2d Cir. 1993)).

III.     *McDonnell Douglas* Framework

On a motion for summary judgment, all of Plaintiff's claims are properly analyzed using the familiar McDonnell Douglas burden shifting test first developed for Title VII claims. Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010); Barella v. Village of Freeport, 16 F. Supp. 3d 144, 158 (E.D.N.Y. 2014); Sotomayor v. City of New York, 862 F.Supp.2d 226, 251 (E.D.N.Y. 2012); Flaherty v. Massapequa Public Schools, 752 F.Supp.2d 286, 295–96 (E.D.N.Y. 2010), aff'd., 462 F. App'x 38 (2d Cir. 2012).

The first step in that test requires plaintiff to establish a prima facie case of discrimination by showing: (1) membership in a protected class; (2) qualification for her position; (3) adverse employment action; and (4) that such action occurred under circumstances giving rise to an inference of discrimination.  Ruiz v. County of Rockland, 609 F.3d 486, 491–92 (2d Cir. 2010); Leibowitz v. Cornell University, 584 F.3d 487, 498 (2d Cir. 2009); Fuentes v. Cablevision Sys., Corp., 2016 WL 4995075, * 5 (E.D.N.Y. 2016); Filippi v. Elmont Union Free School Dist. Bd. of Educ., 2012 WL 4483046 *9-10 (E.D.N.Y. 2012).

The Second Circuit has explained that plaintiff's prima facie burden is de minimis. Abdu–Brisson, 239 F.3d at 467. Nonetheless, in order to state a prima facie case of discrimination, "a plaintiff must proffer some admissible evidence of circumstances that would be sufficient to permit an inference of discriminatory motive." Bennett v. Watson Wyatt & Co., 136 F. Supp. 2d

236, 246 (S.D.N.Y. 2001), aff'd., 51 F. App'x 55 (2d Cir. 2002). The burden is not met through reliance on unsupported assertions, Goenaga, 51 F.3d at 18, or "[s]tatements that are devoid of any specifics, but replete with conclusions." Griffin v. Ambika Corp., 103 F.Supp.2d 297, 308 (S.D.N.Y. 2000) (quoting Bickerstaff v. Vassar College, 196 F.3d 435, 451-52 (2d Cir. 1999).

Once a plaintiff establishes all the elements of her prima facie case, the burden shifts to defendant to "articulate some legitimate, nondiscriminatory reason" for its conduct. Leibowitz, 584 F.3d at 498. Like plaintiff's prima facie burden, defendant's burden of showing legitimate non-discriminatory reasons is similarly "light." Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d Cir. 1998). Thus, defendant is required only to "articulate an explanation that, if true, would connote lawful behavior." Id. "The burden is one of production, not persuasion." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).

If the defendant satisfies this burden of production, plaintiff's prima facie presumption is rebutted, and "drops from the case." Texas Dep't. of Community Affairs v. Burdine, 450 U.S. 248, 255, 255 n. 10 (1981). The burden then shifts back to plaintiff "to demonstrate by competent evidence" that the reasons offered were "a pretext for discrimination." Id. At that point, the plaintiff "is given an opportunity to adduce admissible evidence that would be sufficient to permit a rational finder of fact to infer that the employer's proffered reason is pretext for an impermissible motivation." Vivenzio, 611 F.3d at 106 (quoting, Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000)). Importantly, the ultimate burden of persuasion as to whether there was intentional discrimination "remains at all times with the plaintiff." Burdine, 450 U.S. at 253.

In the final summary judgment analysis, the court must consider all of the evidence properly presented, and "examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer." Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 102 (2d Cir. 2001).

IV.    Disposition of the Motion: Application of *McDonnell Douglas*

As to Plaintiff's prima facie case, there is no question that as an African American, Batson is a member of a protected class.  The court assumes, as do the Defendants for the purpose of this motion, that Plaintiff was qualified at all times for the social worker position. At issue on this motion are the elements of: (1) whether Plaintiff suffered adverse employment action and, if so, (2) whether such action took place under circumstances giving rise to an inference of discrimination. Here, in particular, the issue is whether a reasonable jury could find that the reason offered for Defendants' employment action was a pretext for discrimination.

A.    Adverse Employment Action

Adverse employment action sufficient to satisfy plaintiff's prima facie case, is deemed to have occurred if an employee suffers "a materially adverse change in the terms and conditions of employment". Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).  Such changes are properly defined as adverse if they are "more disruptive than a mere inconvenience or an alteration of job responsibilities." Tolbert, 2015 WL 3875237 *5. Included among such actions are "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." Frisenda v. Inc. Vill. of Malverne, 775 F. Supp. 2d 486, 510 (E.D.N.Y. 2011) (quoting Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)).

Other lesser actions, including transfers or failure to grant a transfer request may, under certain circumstances, constitute adverse employment action. Thus, the Second Circuit has held

that transfer "from an 'elite' division ... which provided prestige and opportunity for advancement, to a less prestigious unit with little opportunity for professional growth," may be deemed adverse. de la Cruz v. New York City Human Res. Admin. Dep't of Soc. Serv., 82 F.3d 16, 21 (2d Cir. 1996); Pimentel v. City of New York, 2002 WL 977535 *3 (S.D.N.Y. 2002).

Although Plaintiff appears to allege that she was subject to unfair treatment during the 2013 school year, these allegations appear to be made as factual background in support of her claim of discrimination. This is made clear in Plaintiff's memorandum of law which states that "[t[he adverse action claimed by Plaintiff is her termination from employment". Plaintiff Mem of Law in Opposition to Summary Judgment, DE 60 at 22.

In view of the fact that Plaintiff's termination was the only adverse employment action, the Court considers Plaintiff's prima facie case to be stated only with respect to that action and turns to consider the remainder of the McDonnell-Douglas test.

B.      Inference of Discrimination

An inference of discrimination may be drawn either from "direct evidence of discriminatory intent," or a showing of disparate treatment compared to others who are similarly situated. Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000). As to the latter method, a showing that an employer treated plaintiff less favorably than other similarly situated employees, outside of plaintiff's protected group, is a "recognized method" for raising an inference of discrimination. Sotomayor, 862 F. Supp. 2d at 254; see Das, 369 F. App'x 186, 189, 2010 WL 786976 *2 ("[a] plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself") (quoting, Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks omitted)); Vega, 2014 WL 2157536 *3.

20

In support of her claim of disparate treatment Plaintiff points to the fact that she was the only African American social worker in the District. The District takes the position that the elimination of Plaintiff's position in favor of hiring a guidance counsel reflected a dire need for a third guidance counselor who could also perform the same counseling duties as Plaintiff.  The District also notes that since a new guidance counselor salary was less that Batson's, hiring of a third guidance counselor and abolishment of the social worker position was a cost-saving measure. Plaintiff was excessed because, although tenured, she was the least senior tenured social worker in the District.

The foregoing facts shift the burden on this motion to Plaintiff to show that the reasons offered for abolishment of Plaintiff's position were a pretext for discrimination.  To show pretext sufficient to defeat summary judgment Plaintiff must point to facts supported by direct or circumstantial evidence pursuant to which it could be rationally found "that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action". Tapia v. TWC Administration LLC, 2018 WL 5016608, *12 (S.D.N.Y. October 16, 2018); see Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000); Jimenez v. City of New York, 605 F. Supp.2d 485, 522 (S.D.N.Y. 2000) (evidence of pretext may be either direct or circumstantial, (citing Burdine, 450 U.S. at 256), but must, "taken as a whole, support[ ] a sufficient rational inference of discrimination," Weinstock, 224 F.3d at 42. "[I]t is not enough ... to disbelieve the employer; the factfinder must [also] believe the plaintiff's explanation of intentional discrimination." St. Mary's Honor Ctr., 509 U.S. at 519 (emphasis omitted).

More specifically, it now falls upon Plaintiff to show facts that would allow a reasonable jury to conclude that race was a reason for her termination. In support of her pretext argument,

Plaintiff notes again (as she may) that she was the only African American social worker in the District in 2013. Both Plaintiff and her former supervisor express their opinions that the hiring of a guidance counsel would not save the District money. Finally, Plaintiff relies on the written District job descriptions of Social Worker and Guidance Counsel to support her position that a guidance counselor is not similarly trained and could not perform the same functions as a social worker.

The District argues that Plaintiff cannot substitute her own opinion for the District's budgetary business decision to excess her position. They do not challenge the assertion that there are differences between the social worker and guidance counsel positions but state that there was, in 2013, a clear need for a third guidance counselor in lieu of a social worker. Defendants also note that Plaintiff has come forward with no direct evidence that any acts were taken against her on account of race. Indeed, Plaintiff stated during her deposition that she had no knowledge of any facts concerning race-based discrimination. Instead, Plaintiff's entire theory of discrimination rests on the argument that she was treated differently from Farrell.  While Farrell is Caucasian, she cannot be similarly situated to Plaintiff since she was a school psychologist and not a social worker. Plaintiff does argue that Farrell should have somehow been disciplined for leaving the building when informed of the suicidal student. However, it was Plaintiff who stayed behind and made the criticized decision to fail to interview the student in Farrell's absence. Thus, Plaintiff was not only dissimilarly situated to Farrell with respect to job title and duties, any action taken against Plaintiff arose under different circumstances. Moreover, after Plaintiff's social worker position was excessed, the District did not hire a social worker of a different race. Instead, as discussed below with respect to the issue of pretext, Plaintiff's position was replaced

by the addition of a third guidance counselor, and not a social worker outside of Plaintiff's protected category.

Neither Plaintiff's nor Murphy's subjective opinions as to whether the District should hire a third guidance counsel instead of a social worker are sufficient to show pretext. Tapia v. TWC Administration LLC, 2018 WL 5016608, *12 (S.D.N.Y. October 16, 2018); Jones v. Bd. of Educ., 2012 WL 1116906, *12 (S.D.N.Y. April 2, 2012). Nor are their opinions as to the District's year to year budgeting decisions. Nothing upon which Plaintiff relies "would permit a rational finder of fact to infer that" her race was a motivating factor behind the District's employment decision to abolish her social worker position in favor of hiring a much needed, and less costly guidance counselor. Subramanian v. Prudential Secs, Inc., 2003 WL 233340865, *9 (E.D.N.Y. November 20, 2003).

Even if Plaintiff's reliance on Farrell as a proper comparator were sufficient to avoid summary judgment, she cannot show that Defendants' explanation for her firing were a pretext for discrimination. "[T]o even shift the burden to the defendant, the plaintiff must produce direct evidence of discrimination akin to "a 'smoking gun' or at least a 'thick cloud of smoke.'" Raskin v. Wyatt Co., 125 F.3d 55, 61 (2d Cir. 1997) (quoting Fields v. New York State Office of Mental Retardation & Developmental Disabilities, 115 F.3d 116, 124 (2d Cir. 1997)). Such evidence might include "policy documents and evidence of statements or actions by decisionmakers 'that may be viewed as *directly reflecting* the alleged discriminatory attitude.'" Raskin, 125 F.3d at 60-61 (emphasis in original) (quoting Lightfoot v. Union Carbide Corp., 110 F.3d 898, 913 (2d Cir. 1997)).

Plaintiff provides no such evidence here. There is no evidence directly reflecting that Defendants eliminated Plaintiff's position, even in part, because of her race. Plaintiff admits that

she received a positive Observation Reports from both Iocolano and Murphy, and that after her termination Iocolano forwarded Plaintiff an email received from a different school district advising Plaintiff of the availability of a full-time social worker position at that district. Def. 56.1 ¶¶ 160-68. The evidence belies any question as to whether Plaintiff's position was eliminated, even in part, because of her race. There is no smoking gun.

Accordingly, even viewing the evidence and drawing all inferences in Plaintiff's favor, this Court finds insufficient evidence from which a trier of fact could reasonably conclude that Defendants terminated Plaintiff's employment, in whole or in part, due to her race. Defendants are therefore entitled to summary judgment on Plaintiff's Title VII claims.

Consequently, for the reasons just discussed in the context of Plaintiff's Title VII claims — lack of sufficient proof of race-based discrimination — Defendants are also entitled to summary judgment on Plaintiff's § 1981 claim.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Defendants' motion for summary judgment, appearing as Docket Entry No. 54 herein, be granted in its entirety.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn,

474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive

right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to

object timely to a magistrate's report operates as a waiver of any further judicial review of the

magistrate's decision").


Dated:  Central Islip, New York
        January 7, 2019

                                             /s/ Anne Y. Shields
                                             Anne Y. Shields
                                             United States Magistrate Judge